IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EMERSON, | : | CIVIL ACTION NO. **3:CV-06-0035** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| PAUL L. JENNINGS, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

The Plaintiff, James Emerson, formerly an inmate at the Lackawanna County Prison, ("LCP")

Scranton, Pennsylvania, and now an inmate at the State Correctional Institution at Mahanoy ("SCI-

Mahanoy"), filed this civil rights action on January 6, 2006, pursuant to 42 U.S.C. § 1983.  (Doc.

1).[1]   The Plaintiff also filed two *in forma pauperis* applications.   (Docs. 2 & 5).   We then

preliminarily screened the Complaint.  We issued a Report and Recommendation on January 25,

2006, in which we recommended that all four named Defendants, Jennings, Donate, Bunting and

Betti, be dismissed for failure to state a claim under the Eighth Amendment against them pursuant

to 28 U.S.C. §1915(e)(2)(B)(ii).  (Doc. 9).  On February 27, 2006, the District Court declined to

adopt our Report and Recommendation, and directed Plaintiff to file an amended complaint within

---

[1]Plaintiff incorrectly indicated of his form original complaint that it was under 28 U.S.C.
§ 1331.  However, since Plaintiff is a state inmate making a claim against state officials, his
action is pursuant to § 1983.  (Doc. 1, p. 1).

twenty (20) days. (Doc. 13).[2]  On March 20, 2006, Plaintiff filed an Amended Complaint and three Supplements. (Docs. 15, 16, 17 & 18).  The Amended  Complaint and each Supplement filed by Plaintiff addressed his claims separately against each Defendant.  The claims against Defendant Betti were in Doc. 15. The claims against Defendant Bunting were predominantly in Doc. 16.  The claims against Defendant Doctor John Doe at Mercy Hospital were in Doc. 17.   The claims against Defendant Warden Jennings as well as Defendant Bunting were in Doc. 18.  We did  not find any claims against Defendant Donate in any of Plaintiff's Supplements.   We construed Plaintiff's Amended Complaint to be Docs. 15, 16, 17 & 18.

We then screened Plaintiff's amended pleadings on March 24, 2006.[3]  We found that Plaintiff did not  raise any claims against Defendant Janine Donate, Assistant Warden at LCP, in his Amended Complaint and Supplements. Thus, we recommended that Defendant Donate be dismissed.  We also found  that  Defendant Doctor John Doe at the Mercy Hospital was  not a state actor and should be dismissed.   We further found  sufficient Eighth Amendment claims of denial of medical care against Defendant Jennings, Defendant Betti, and Defendant Bunting.  We stated that Plaintiff alleged their personal involvement in his Docs. 15, 16 and 18.   (Doc. 19).  On May 12, 2006, the District Court adopted our Report and Recommendation. (Doc. 28).  Thereafter, the remaining  Defendants were served with Plaintiff's Amended Complaint and Supplements.

---

[2]The District Court also denied Plaintiff's Motion for Appointment of Counsel. (Doc. 11). *See* Doc. 13.

[3]The Plaintiff seeks compensatory damages in his amended pleading.

In response to Plaintiff's pleadings, Defendant Bunting filed a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), on October 3, 2006. **(Doc. 62)**. Defendant filed her support Brief on October 9, 2006, and Plaintiff filed two opposition Briefs on October 13, 2006 and October 18, 2006. (Docs. 63, 65, 66). Plaintiff attached two exhibits to his first Brief. (Doc. 65). The Local Rules do not require two opposing briefs to be filed. Nor did Plaintiff seek leave of Court to file two briefs. However, in light of his *pro se* status, we shall consider both of his Briefs.[4]

Inexplicably, Defendant Bunting filed a second Motion to Dismiss on October 25, 2006, along with a support Brief. (Docs. 70 & 71). Defendant Bunting's second Motion was filed by a different counsel than her first Motion, but both counsel have entered their appearance on the docket for this Defendant. Defendant Bunting's second Motion is not yet ripe. However, since her first Motion is ripe, we shall consider it. We shall have Defendant Bunting's second Motion to Dismiss stricken from the docket, since neither of her counsel have explained to this Court why they filed two separate Motions, both under Rule 12(b)(6). (Doc. 70).

## II. Section 1983 Standard.

In an action brought pursuant to 42 U.S.C. § 1983, the Plaintiff must prove the following two essential elements in order to state a claim: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United

---

[4]As stated, Defendant Bunting's Motion is under Rule 12(b)(6). Ordinarily, the Court does not consider any exhibits outside of the pleadings when ruling on a Rule 12(b)(6) motion. However, since Plaintiff's exhibits can be construed as documents referenced in his pleadings and upon which his claims are based, the Court will consider them for present purposes. *See Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993);

*See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations

of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

In his amended pleading, the Plaintiff named five  (5) Defendants, of which three remain.

The remaining Defendants  are stated to be employees of LCP, namely (former) Warden Jennings,

Director Betti and head nurse Bunting.  Thus, we have found the three remaining Defendants to

be state actors for purposes of this § 1983 action.

## III.  Motion to Dismiss Standard.

When evaluating a pleading for failure to state a claim, the court must accept all material

allegations of the complaint as true and construe all inferences in the light most favorable to the

plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A complaint should not be dismissed for

failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 44-46

(1957);  *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).  A complaint that sets out facts

which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed

without leave to amend.  *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).  A complaint filed by a

*pro se* party should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the

Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hughes*

*v. Rowe*, 449 U.S. 5, 10 (1980) (citation omitted).

**IV. Allegations of Complaint.**

In his original Complaint, Plaintiff alleged that on March 30, 2004, while he was at LCP, he fell while "coming down the step when the real [rail] (sic) came out the wall and I had went in the air and came down on my back neck and head and my foot on the left side ... " (*Id.*, p. 2, ¶ IV.). Plaintiff admitted that, due to his injuries, "I was taking (sic) out at Mercy Hospital at Scranton PA where x rays and a MRI was taking (sic) and I was sent back to the county prison... ." Plaintiff then stated that he told all of them "my neck and back was in bad pain." He stated that he was told "there was not anything wrong with me." Plaintiff then stated that after he was transferred to SCI-Mahanoy, "I told the medical people and I was send (sic) out to the hospital for a x-rays (sic) and a MRI . . . " The hospital staff told him he needed an operation since the disc in his neck was not good and that he "would not walk if [he] got into a fight or did hard work." (*Id.*, p. 3). Plaintiff then averred that a disc and bone were removed during an operation at Geisinger Hospital on September 14, 2005. Plaintiff concluded that he had a bone and disc taken out and that he has suffering and pain all the time. (*Id.*).

In his Supplement to his Amended Complaint docketed as Doc. 16, Plaintiff states his allegations against Defendant Bunting. Plaintiff notes that many of his claims against Bunting took place in April 2004. (Doc. 16, p. 4). Plaintiff avers that Bunting was the head of Prime Care Medical at LCP. Plaintiff states that Bunting told him to walk to a wheel chair as he exited from the car parked in front the prison to go back to the prison, even though he told her he could not walk without help due to back pain. Plaintiff states that Officer Brown then helped him out of the car, and Bunting also helped him. (Doc. 16, p. 1). Bunting told Plaintiff that she was sending him

back to his cell block despite his telling her he had back pain and could not walk, and that he needed to be put on the medical block.  Bunting told Plaintiff that she would place him in the quarantine block in a camera cell, even though he told her he should be in the medical  block. (*Id.*, p. 2).  After Plaintiff complained of head, neck and back pain, Bunting had a nurse bring him Motrin.  Plaintiff said he told the nurse he could not take Motrin due to health problems with it, and Bunting came to speak with him after he requested to see her.  Plaintiff told her he could not take Motrin, and Bunting told him that "I don't know what to tell you." (*Id.*, p. 3).   Plaintiff requested some heat for the pain, and he was given white cream that did nothing for him.  Bunting then had a doctor come to see him and "look over my body, and [the doctor] tell me I need to move around more."  Plaintiff told the doctor he could not move around due to his pain, and the doctor told him to try before his "mucus (sic)" tighten up and could not move.  (*Id.*).[5]   Plaintiff told the doctor he could not take the Motrin, and that he should be placed in a medical cell.  Bunting said when Plaintiff moved and walked around, he would be taken out of the camera cell.  Plaintiff said he told the doctor and Bunting that he would try to move but that it caused him pain when he did.  (*Id.*, p. 4).

Plaintiff states that, after he wrote Lackawanna County Judge Geroulo in April 2004 about having a problem with the head lady in charge of medical at LCP, and that she was trying to make him take drugs and do things he could not tolerate, he was moved out of the camera cell into cell Q1.  Plaintiff states that he was in the camera cell for 12 days.  (*Id.*, p. 5).  Bunting visited Plaintiff

---

[5]Plaintiff seems to refer to his meniscus.

about his letter to Judge Geruolo and told him she was not trying to make him do things he did not want to do. Plaintiff told Bunting that his back was not feeling better and that he had problems sleeping. Bunting told him to get out of bed and walk around a little, and that she would let him out of Q block. (*Id.*). Plaintiff tried but had bad back and head pain. Later that night Plaintiff, pursuant to Bunting's conversation with Plaintiff, was moved to Alpha Block. (*Id.*, p. 6). While in Alpha Block, in June and July 2004, he asked to see Bunting due to back pain, and she said she would get him a back brace. Plaintiff requested that she allow him to see some other (non-prison staff) doctor "to give him more x rays and MRI." (*Id.*, p. 7). Bunting got mad and told Plaintiff that "you can get a x ray here and I'll send you to Mercy [Hospital] for your MRI." Plaintiff agreed to that course of action. Plaintiff concludes as follows:

> The next day came, and I put in a for sick call, because my back
> was in pain, and I was crying because it hurt so bad. When they
> call sick call I was taking (sic) down, but she told me I want you to take
> an Xray. I said, I did it at Mercy Hospital, I have taking (sic ) Xrays
> and a (sic) MRI.

(*Id.*, p. 7).[6]

**V.  Discussion.**

As this Court recently stated in *Anderson v. BOP*, 2005 WL 2314306 (M.D. Pa. 2005), *7:

> The Eighth Amendment "requires prison officials to provide basic medical
> treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d
> 192, 197 (3d Cir.1999)(*citing Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50
> L.Ed.2d 251 (1976)). To establish a medical claim based on the Eighth
> Amendment, an inmate must allege (1) acts or omissions by prison

---

[6]Plaintiff's second opposition Brief (Doc. 66) is partially repetitive of his stated allegations against Defendant Bunting as averred in his supplemental pleading, Doc. 16.

officials sufficiently harmful (2) to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003). The inmate must satisfy this two-part, conjunctive test. Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *See Farmer v. Brennan,*511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed. *Estelle v. Gamble,* 429 U.S. 97, 104--105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, if a prisoner is under the care of a medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *Farmer, supra,* 511 U.S. at 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Estelle v. Gamble,*429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon,*897 F.2d 103, 110 (3d Cir.1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a

§ 1983 cause of action, and an inmate's disagreement with medical
treatment is insufficient to establish deliberate indifference. *See Durmer v.
O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).

Plaintiff claims that Defendant Bunting should not have placed him in a camera cell for 12 days and that he should have been placed in a medical block. Plaintiff claims that the compulsory placing him in a camera cell to which he did not consent violated his common law right to refuse treatment. (Doc. 66, p. 3). Plaintiff admits that a camera cell was used for ill patients, although he states that the inmates in such cells had mental health issues and were there for infectious disease screening. (*Id.,* p. 4). We do not find that Plaintiff's claim that Defendant Bunting placed him for 12 days in a camera cell as opposed to a cell in the medical block, violated his Eighth Amendment rights. Nor do we find that Plaintiff's claim that Defendant Bunting told him to walk from a car to a wheelchair to return to LCP arises to an Eighth Amendment claim. Thus, we shall recommend that these two claims of Plaintiff against Defendant Bunting be dismissed.

Plaintiff states that he had a serious physical condition due to a bone and disc broken in his neck and that he was in bad pain. (*Id.,* p. 4). We find that Plaintiff has stated a serious medical condition. Plaintiff states that he tried to tell Defendant Bunting several times about his daily pain for 12 months at LCP, but claims that he "was left in pain night and day for '12' months without the right care." (*Id.*). Plaintiff states that Bunting knew about his daily pain, and that she only gave him muscle cream and Motrin that did not help. Plaintiff admits that Bunting ordered him to have an X- ray, but he states that he did not trust her or the Mercy Hospital, since she was nasty and unprofessional when she ordered them, and since he had to write to Warden Jennings about her unprofessional conduct. (*Id.,* p. 5). Plaintiff concedes that Bunting had a doctor examine him, but

he states that the doctor did what Bunting told her.  (*Id.*, p. 6).   Plaintiff states that, despite his

complaining to LCP staff about his pain and suffering due to a broken bone in his disc and neck,

Defendant "Bunting did not take time out and send me to some other hospital.  I was put on hold

for '12' month's befor (sic) Geisinger Hospital told me I had a disc and bone broken."  (*Id.*, p. 6).

Plaintiff attached to his first opposition Brief a copy of a letter to Warden Jennings dated

August 20, 2004, in which he complained about his back problem due to a fall in the prison.[7]

Plaintiff states that he was taken to Mercy Hospital on March 31, 2004, and some of his problems

were taken care of.  He complained about Bunting and her unprofessional conduct, since she tried

to make him walk from a wheel chair when he told he could not, and since she gave him medicine

he could not take due to a bad liver.  Plaintiff stated that the needed to be sent out of the prison

so his back could be properly treated.  (Doc.. 65, Ex. 2).   Plaintiff attached the Warden's

August 24, 2004 response Memo, in which the Warden stated that he forwarded Plaintiff's letter

to Defendant Betti, Director of Clinical Services, to address with Defendant Bunting.  (*Id.*, Ex. 1).

We find that Plaintiff has sufficiently alleged that Defendant Bunting was deliberately

indifferent to his serious medical back condition for 12 months without providing him with proper

care.  We shall recommend that Defendant Bunting's Motion to Dismiss be granted in part and

denied in part.

---

[7] As we have previously stated, Plaintiff indicated that he fell due to possible negligence
at LCP in maintaining the steps and railing, and that as a result, he injured his back, neck, head
and left foot .

Notwithstanding Plaintiff's admission that Defendant Bunting provided him with medical care, and that, to an extent, he disagreed with his treatment, Plaintiff has alleged that Defendant Bunting denied him proper medical care for 12 months (*i.e.*, needed back surgery), despite his being in constant pain and telling her about it, and that she was deliberately indifferent to his serious medical needs.  We disagree with Defendant that Plaintiff is simply challenging the quality of care he received. (Doc. 63, p. 4).  Plaintiff has sufficiently alleged that the stated Defendant denied him  medical care after his fall at LCP and that he was treated with deliberate indifference by her at LCP.  Plaintiff alleged the personal involvement of this Defendant in the violation of his constitutional rights.

We find that the case as against Defendant Bunting should proceed, and that her Motion to Dismiss should be denied with respect to the Eighth Amendment claim that she was deliberately indifferent to his serious back condition.   Based on Plaintiff's Amended and Supplemental pleadings, Defendant  Bunting was personally involved in this case, since it is alleged that she denied Plaintiff proper medical treatment for his serious broken back and disc problem, which subjected him to constant pain and permanent disability.  Thus, Defendant Bunting is alleged to have violated Plaintiff's Eighth Amendment rights by acting deliberately indifferent to his serious medical needs.

11

**VI.  Recommendation.**

Based on the foregoing, it is respectfully recommended that this case proceed with respect to Plaintiff's Eighth Amendment claim against Defendant Bunting, that she was deliberately indifferent to his serious back condition, and that her Motion to Dismiss be DENIED with respect to this claim.  **(Doc. 62).**   It is recommended that Defendant Bunting's Motion to Dismiss be GRANTED with respect to Plaintiff's Eighth Amendment claims that Defendant Bunting told him to walk to a wheelchair and that Defendant Bunting placed him in a camera cell for twelve (12) days.   It is also recommended that this action be remanded to the undersigned for further proceedings, including directing Defendant Bunting to file her answer to Plaintiff's amended and supplemental pleadings.


                                        <u>**s/ Thomas M. Blewitt**</u>
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated:  November 9, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES EMERSON,                    :        CIVIL ACTION NO. **3:CV-06-0035**
                                  :
            Plaintiff             :        (Judge Kosik)
                                  :
            v.                    :        (Magistrate Judge Blewitt)
                                  :
                                  :
PAUL L. JENNINGS, et al.,         :
                                  :
            Defendants            :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 9, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall

13

witnesses or recommit the matter to the magistrate judge with
instructions.


                        _____  **s/ <u>Thomas M. Blewitt</u>**
                                                     **THOMAS M. BLEWITT**
                                                     **United States Magistrate Judge**

**Dated: November 9, 2006**

14