IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EMERSON, | : | CIVIL ACTION NO. **3:CV-06-0035** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| PAUL L. JENNINGS, et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**I. Background.**

The Plaintiff, James Emerson, formerly an inmate at the Lackawanna County Prison, ("LCP") Scranton, Pennsylvania, filed, *pro se*, this civil rights action on January 6, 2006, pursuant to 42 U.S.C. § 1983. (Doc. 1).[1]  Plaintiff is no longer incarcerated, and his last known address was an apartment in Reading, Pennsylvania.  The Plaintiff also filed two *in forma pauperis* applications. (Docs. 2 and 5).  We then preliminarily screened the Complaint.  We issued a Report and Recommendation ("R&R") on January 25, 2006, and we recommended that all four named Defendants, Jennings, Donate, Bunting and Betti, be dismissed for failure to state a claim under the Eighth Amendment against them pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).  (Doc. 9).  On February 27, 2006, the District Court declined to adopt our Report and Recommendation, and directed Plaintiff to file an amended complaint within twenty (20) days.  (Doc. 13).[2]

---

[1] Plaintiff correctly indicated on his form original complaint that this Court had jurisdiction over his civil rights action under 28 U.S.C. § 1331.

[2] The District Court also denied Plaintiff's Motion for Appointment of Counsel. (Doc. 11). *See* Doc. 13.

On March 20, 2006, Plaintiff filed an Amended Complaint and three Supplements. (Docs. 15, 16, 17 and 18).  The Amended  Complaint and each Supplement filed by Plaintiff addressed his claims separately against each Defendant.  The claims against Defendant Betti were in Doc. 15. The claims against Defendant Bunting were predominantly in Doc. 16.   The claims against Defendant Doctor John Doe at Mercy Hospital were in Doc. 17.  The claims against Defendant Warden Jennings as well as Defendant Bunting were in Doc. 18.  We construed Plaintiff's Amended Complaint to consist of Docs. 15, 16, 17 and 18 combined together.

We then screened Plaintiff's amended pleadings and issued an R&R  on March 24, 2006. We found that Plaintiff did not raise any claims against Defendant Janine Donate, Assistant Warden at LCP, in his Amended Complaint and Supplements.  Thus, we recommended that Defendant Donate be dismissed.  We also found  that  Defendant Doctor John Doe at the Mercy Hospital was not a state actor and should be dismissed.  We found Plaintiff's Eighth Amendment claims of denial of medical care against Defendant Jennings, Defendant Betti, and Defendant Bunting to be sufficient for screening purposes.   (Doc. 19).  On May 12, 2006, the District Court adopted our Report and Recommendation.  (Doc. 28).  Thereafter, the remaining Defendants were served with Plaintiff's Amended Complaint and Supplements.

In response to Plaintiff's pleadings, Defendant Bunting filed a Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on October 3, 2006.   (Doc. 62). Defendant filed her support Brief on October 9, 2006, and Plaintiff filed two opposition Briefs on October 13, 2006 and October 18, 2006. (Docs. 63, 65, and 66).

On November 9, 2006, we issued an R&R and recommended that this case proceed with respect to Plaintiff's Eighth Amendment claim against Defendant Bunting, that she was deliberately indifferent to his serious back condition, and that her Motion to Dismiss be denied with respect to this claim. (Doc. 62). It was recommended that Defendant Bunting's Motion to Dismiss be granted with respect to Plaintiff's Eighth Amendment claims that Defendant Bunting told him to walk to a wheelchair and that Defendant Bunting placed him in a camera cell for twelve (12) days. It was also recommended that this action be remanded to the undersigned for further proceedings, including directing Defendant Bunting to file her answer to Plaintiff's amended and supplemental pleadings. (Doc. 80). On March 28, 2007, the District Court adopted our R&R. (Doc. 92).

On September 20, 2007, Attorney Jeffery C. Dohrmann entered his appearance on behalf of Plaintiff. (Doc. 102). The deadlines for discovery and the filing of dispositive motions were extended. On October 24, 2007, the parties consented to proceed before the undersigned for all proceedings. (Doc. 105).

In 2008, the Court again extended, on several occasions, the deadlines in this case. Plaintiff's deposition was scheduled for May 28, 2008 by Defendant Bunting, and Plaintiff's counsel were present for the deposition. However, the deposition had to be cancelled since Plaintiff's counsel was not able to locate Plaintiff and the mail he sent to Plaintiff was returned as undeliverable.

On October 15, 2008, the Court issued a final order extending the deadlines. The discovery deadline was set at January 1 2009, and the dispositive motion deadline was set at February 27, 2009. (Doc. 130).

On October 30, 2008, counsel for Plaintiff filed a Motion to Withdraw as Counsel.  (Doc. 132).  The Court scheduled oral argument on the Motion and Plaintiff was directed to be present. (Doc. 133).  On November 14, 2008, the Motion to Withdraw as Plaintiff's Counsel and the Court's Order scheduling oral argument sent to Plaintiff were returned as undeliverable.  (Doc. 134). Plaintiff did not provide either the Court or his counsel with a current address.

In his Motion to Withdraw, Plaintiff's counsel stated:

> 2.      During the course of the representation, Plaintiff, on several occasions, has been unresponsive to telephone messages and correspondence requesting information and seeking to schedule certain matters, and has failed or refused to follow the undersigned's advice in obtaining or providing to counsel certain critical information, or taking certain critical steps to further Plaintiff's case.

> 3.      In the past, Plaintiff has also changed addresses and/or phone numbers without informing counsel so that lapses in the ability to contact Plaintiff occurred.

> 4.      During the month of October 2008, while the parties were attempting to schedule depositions of Plaintiff and others, Plaintiff has again "disappeared," *i.e.* his phone has been disconnected and certified and regular mail sent to his last known address has been returned and marked, "Return to Sender  - - Attempted  - - Not Known - - Unable to forward."

> 5.      Under the above circumstances, *i.e.* failure or refusal to cooperate with counsel's advice, failure or refusal to respond to inquiries regarding critical steps and information, and "disappearing" while failing or refusing to provide counsel with phone numbers or addresses where Plaintiff may be contacted, counsel is unable effectively to represent Plaintiff or his interests, and counsel believes and therefore avers that the attorney/client relationship has been irretrievably broken.

(Doc. 132, ¶'s 2.-5.).

The Court held oral argument on the Motion of Plaintiff's counsel to Withdraw, and Plaintiff failed to appear for argument, and he failed to advise the Court of his current address. (Doc. 135). The Court concurred with the stated representations contained in Plaintiff's Counsel's Motion to Withdraw.

On November 25, 2008, the Court issued the following Order:

> Upon consideration of Plaintiff's Counsel's Concurred-in Motion to Withdraw as Counsel (Doc. 132), and after hearing oral argument on November 25, 2008, IT IS HEREBY ORDERED THAT:
>
> 1. Said Motion is hereby GRANTED, and Jeffrey C. Dohrmann, Esquire, is hereby deemed withdrawn as counsel for Plaintiff.
>
> 2. Mr. Dohrmann, however, shall remain on the list of attorneys receiving e-filed documents in this case so that he may receive notice if new counsel should enter their appearance, or if this matter should settle or result in a Plaintiff's verdict so that he may protect his right to fees and costs, if applicable.
>
> 3. Plaintiff is afforded ten (10) days from the date of this Order within which to secure new counsel and to have new counsel enter an appearance in this case.
>
> 4. The Clerk of Court is directed to provide a copy of this Order to Plaintiff at his last-known address, as follows:
>
> > Mr. James Emerson
> > 1258 Perkomen Avenue
> > Apt. 4
> > Reading PA 19602

(Doc. 136).

Thus, as of November 25, 2008, Plaintiff was again proceeding *pro se* and he was obligated to advise the Court of his current address and to participate in discovery.[3]

On December 9, 2008, the Court's November 25, 2008 Order mailed to Plaintiff was returned as undeliverable. (Doc. 138).

On January 12, 2009, the Court conducted a telephone status conference since this case was not progressing forward. (Doc. 139).[4]  The conference proceeded with only counsel for Defendant Bunting, since counsel for the other Defendants advised the Court they were not available, and since Plaintiff did not provide a telephone number to contact him.  Counsel for Defendant Bunting advised the Court that he had rescheduled Plaintiff's May 2008 deposition and that the notice was returned since Plaintiff could not be located.  Counsel for Defendant Bunting also advised the Court that he would be filing a motion to dismiss the case due to Plaintiff's failure to prosecute it.

On January 13, 2009, Defendant Bunting filed a Motion to Dismiss Plaintiff 's Complaint due to Plaintiff's failure to prosecute his case pursuant to Fed.R.Civ.P. 41(b).  **(Doc. 140).**  Defendant Bunting filed her support Brief on February 9, 2009, after the Court, *sua sponte*, gave her an extension of time to do so.  (Docs. 141 and 142).  On February  11, 2009, the Motion to Dismiss of Defendant Bunting sent to Plaintiff was returned as undeliverable.  (Doc. 143).  To date, Plaintiff has not opposed Defendant Bunting's Motion to Dismiss, nor has he requested an extension of time

---

[3]Plaintiff was provided with a copy of the pertinent Local Rules of this Court.  Doc. 7.

[4]In fact, Plaintiff's deposition was never held since Plaintiff could not be located.

to do so.  In fact, Plaintiff has had no contact with this Court long before his counsel moved to withdraw his appearance.   Defendants Jennings and Betti have not filed any opposition to Defendant Bunting's Motion to Dismiss, nor have they filed their own Motions to Dismiss.

The Court now considers the unopposed Motion to Dismiss of Defendant Bunting.

## II. Discussion.

Defendant Bunting asserts that Plaintiff has failed to prosecute his action and that he has failed to abide by the Court's Orders, which has caused her prejudice.  As mentioned, Plaintiff has failed to timely respond to said Motion.  Defendant states that she has no viable address for the now *pro se* Plaintiff and that she has no means to locate or contact Plaintiff.  Defendant states that since Plaintiff's whereabouts are not known, she has no way to send him discovery and to compel his attendance at a deposition.  Thus, Defendant concludes that she cannot properly defend against Plaintiff's Eighth Amendment claim that she was deliberately indifferent to his serious back condition when he was incarcerated at LCP.[5]  Due to Plaintiff's dilatory conduct, Defendant Bunting requests the Court to dismiss Plaintiff's Amended Complaint in its entirety.   (Doc. 140, p. 3).

In her Brief, Defendant Bunting states as follows:

> Since his former attorney has withdrawn, the Plaintiff has not filed any documentation with this Honorable Court to advise of his new address, nor has he provided any information about his current address to this Honorable Court or to the attorneys representing the Defendants in this action.

---

[5]Since we have detailed the claims of Plaintiff in his Amended Complaint as against the three remaining Defendants in our March 24, 2006 R&R and our November 9, 2006 R&R (Docs. 19 and 80), we do not repeat them entirely herein.

> Based on the Plaintiff's failure to advise this Honorable Court or Defense Counsel of a current address it is not possible to have direct communication to the Plaintiff.  Without an ability to make contact to the Plaintiff or request that he participate in any litigation activity, it is not possible for Defendant to defend against the Plaintiff's claim.  The Plaintiff has failed to continue to prosecute this case in the most elemental sense that he has not maintained contact with This Honorable Court and has not provided any viable address to This Honorable Court.

(Doc. 142, p. 2).

As the Court stated in *Smith v. Altegra Credit Co.*, 2004 WL 2399773, * 3 (E.D. Pa.):

> Two sources of authority grant this Court authority to impose, *sua sponte*, a sanction of dismissal with prejudice in this case. First, the Supreme Court held in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962) (per curiam), that district courts have the inherent power to dismiss a case for failure to prosecute a claim. "The power to invoke this sanction [of dismissal] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30.

The *Smith* Court further stated:

Second, this Court is authorized by Federal Rule of Civil Procedure 16(f) to impose sanctions for a party's failure to comply with a court's pretrial conference scheduling order.  Rule 16(f) states, in pertinent part:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference . . .  upon motion or the judge's own initiative, [the court] may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

Fed.R.Civ. P. 16(f).  One of the sanctions permitted under Rule 37(b)(2) is dismissal of a case with prejudice.  Fed.R.Civ.P. 37(b)(2)(C); *see also Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.)*, 132 F.3d 152, 154 n. 2 (3d Cir. 1997) ("Rule 16(f), which provides sanctions for failure to comply with pretrial and scheduling orders of the court incorporates the sanctions under Rule 37 by reference, including the Rule 37(b)(2)(C)

provision for dismissal for failure to comply with discovery orders.").

*Id* at * 4.

The *Smith* Court then stated that:

> When considering whether it is appropriate to dismiss a case, either as part of the Court's inherent power to dismiss for failure to prosecute or as a Rule 16(f) sanction, a court must consider the factors outlined in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867-68 (3d Cir. 1984). *Mindek*, 964 F.2d at 1373. The *Poulis* factors are: "(1) the extent of the party's personal responsibility [for the rule violation(s)]; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness [by the party]; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." 747 F.2d at 868 (emphases omitted). The *Poulis* standard is not a "mechanical calculation" for deciding whether or not to dismiss a plaintiff's complaint, and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Mindek*, 964 F.2d at 1373. Rather, the decision whether or not to dismiss a claim under *Poulis* is a balancing test, *United States v. 68.94 Acres of Land*, 918 F.2d 389, 397 (3d Cir. 1990), that "must be made in the context of the district court's extended contact with the litigant." *Mindek*, 964 F.2d at 1373.

*Id.*; *Bromily, Inc. v. State Nat. Ins. Co., Inc.*, 2008 WL 5146524 (M.D. P.a).

We now apply the stated *Poulis* factors to our case.

This Court has afforded Plaintiff every opportunity during the past three and one-half months (*i.e.*, since November 2008) to apprise the Court of his address and to obtain new counsel, and he has, personally, repeatedly failed to do so. Further, Plaintiff has been given ample time to respond to Defendant Bunting's Motion to Dismiss. Plaintiff, through his stated personal conduct, has now demonstrated a desire to no longer prosecute his case. As in *Smith*, our Plaintiff is personally responsible for his failures to participate in the Court-ordered conferences, for his failure

to abide by the Court's Orders, and for his failures to apprise the Court of his current address and to participate in discovery.

The Court agrees with Defendant Bunting and finds that Plaintiff's conduct has prejudiced both her and the other two Defendants.  Defendants have been prevented from preparing their defense, and the long delay in the advancement of this 2006 case, as well as the conferences held by the Court, have needlessly cost Defendants both time and money.  Defendant Bunting 's counsel was present at the May 2008 deposition scheduled for Plaintiff, he was present at the hearing regarding the Motion of Plaintiff's Counsel to Withdraw, he participated in all conferences, and he was available for the conferences in which Plaintiff chose not to participate.  Defendant Bunting, in her Motion to Dismiss, also states how she has been severely prejudiced by Plaintiff's conduct in failing to prosecute his case, since she has been prevented from conducting meaningful discovery, including deposing Plaintiff.   The Court also finds that the other two non-moving Defendants, Jennings and Betti, have also been greatly prejudiced by Plaintiff's wilful conduct.

Plaintiff's stated conduct has shown that he has repeatedly failed to participate in the Court-ordered conferences, failed to appear as his deposition, and that he has been dilatory in failing to respond to Defendant Bunting's Motion to Dismiss.

Based on Plaintiff's stated personal conduct, we find that it has been willful. *See Bromily, supra*.  As the *Smith* Court stated, "[c]onsistent failure to comply with a court's pre-trial orders despite repeated warnings about the consequences of noncompliance is sufficient evidence of 'flagrant bad faith' to warrant dismissal."   *Id*. at * 6 (citation omitted).

As in *Smith and Bromily*, we find that dismissal of this case is the proper sanction at this time. This Court has repeatedly extended deadlines in this case due to Plaintiff's failure to participate in discovery and his failure to appear at his deposition, and it has attempted other sanctions, such as warnings to the Plaintiff. As a result of Plaintiff's conduct, this case has been sitting idly on the Court's docket for months with virtually no activity. These sanctions have proven to be ineffective, as Plaintiff has again recently ignored the Court's directives. We find that imposing a monetary sanction against Plaintiff would be pointless in light of his recent release from incarceration. We agree with Defendant Bunting that at this point, only the sanction of dismissal of Plaintiff's entire case is appropriate.

Finally, we consider whether Plaintiff has a meritorious claim. As stated, Plaintiff asserts an Eighth Amendment denial of proper medical care claim against Defendant Bunting.

As we stated in our November 9, 2006 R&R (Doc. 80):

> In his original Complaint, Plaintiff alleged that on March 30, 2004, while he was at LCP, he fell while "coming down the step when the real [rail] (sic) came out the wall and I had went in the air and came down on my back neck and head and my foot on the left side ... " (*Id.*, p. 2, ¶ IV.). Plaintiff admitted that, due to his injuries, "I was taking (sic) out at Mercy Hospital at Scranton PA where x rays and a MRI was taking (sic) and I was sent back to the county prison... ." Plaintiff then stated that he told all of them "my neck and back was in bad pain." He stated that he was told "there was not anything wrong with me." Plaintiff then stated that after he was transferred to SCI-Mahanoy, "I told the medical people and I was send (sic) out to the hospital for a x-rays (sic) and a MRI . . . " The hospital staff told him he needed an operation since the disc in his neck was not good and that he "would not walk if [he] got into a fight or did hard work." (*Id.*, p. 3). Plaintiff then averred that a disc and bone were removed during an operation at Geisinger Hospital on September 14, 2005. Plaintiff concluded that he had a bone and disc taken out and that he has suffering and pain all the time. (*Id.*).

In his Supplement to his Amended Complaint docketed as Doc. 16, Plaintiff states his allegations against Defendant Bunting.  Plaintiff notes that many of his claims against Bunting took place in April 2004.  (Doc. 16, p. 4). Plaintiff avers that Bunting was the head of Prime Care Medical at LCP. Plaintiff states that Bunting told him to walk to a wheel chair as he exited from  the car parked in front  the prison to go back to the prison, even though he told her he could not walk without help due to back pain.  Plaintiff states that Officer Brown then helped him out of the car, and Bunting also helped him.  (Doc. 16, p. 1).   Bunting told Plaintiff that she was sending him back to his cell block despite his telling her he had back pain and could not walk, and that he needed to be put on the medical block. Bunting told Plaintiff that she would place him in the quarantine block in a camera cell, even though he told her he should be in the medical  block. (*Id*., p. 2).  After Plaintiff complained of head, neck and back pain, Bunting had a nurse bring him Motrin.  Plaintiff said he told the nurse he could not take Motrin due to health problems with it, and Bunting came to speak with him after he requested to see her.  Plaintiff told her he could not take Motrin, and Bunting told him that "I don't know what to tell you." (*Id*., p. 3).   Plaintiff requested some heat for the pain, and he was given white cream that did nothing for him.  Bunting then had a doctor come to see him and "look over my body, and [the doctor] tell me I need to move around more."   Plaintiff told the doctor he could not move around due to his pain, and the doctor told him to try before his "mucus (sic)" tighten up and could not move.  (*Id*.).[FN6]   Plaintiff told the doctor he could not take the Motrin, and that he should be placed in a medical cell.  Bunting said when Plaintiff moved and walked around, he would be taken out of the camera cell.  Plaintiff said he told the doctor and Bunting that he would try to move but that it caused him pain when he did.  (*Id*., p. 4).

Plaintiff states that, after he wrote Lackawanna County Judge Geroulo in April 2004 about having a problem with the head lady in charge of medical at LCP, and that she was trying to make him take drugs and do things he could not tolerate, he was moved out of the camera cell into cell Q1. Plaintiff states that he was in the camera cell for 12 days.  (*Id*., p. 5). Bunting visited Plaintiff about his letter to Judge Geroulo and told him she was not trying to make him do things he did not want to do. Plaintiff told Bunting that his back was not feeling better and that he had problems sleeping.  Bunting told him to get out of bed and walk around a little, and that she would let him out of Q block. (*Id*.). Plaintiff tried but had bad back and head pain.  Later that night Plaintiff, pursuant to Bunting's conversation with Plaintiff, was moved to Alpha Block.  (*Id*., p. 6).  While in Alpha Block, in June and July 2004, he asked to see Bunting due to back

pain, and she said she would get him a back brace.  Plaintiff requested that she allow him to see some other (non-prison staff) doctor "to give him more x rays and MRI."  (*Id.*, p. 7).  Bunting got mad and told Plaintiff that "you can get a x ray here and I'll send you to Mercy [Hospital] for your MRI."  Plaintiff agreed to that course of action.  Plaintiff concludes as follows:

> The next day came, and I put in for a sick call, because my back was in pain, and I was crying because it hurt so bad.  When they call sick call I was taking (sic) down, but she told me I want you to take an Xray.  I said, I did it at Mercy Hospital, I have taking (sic ) Xrays and a (sic) MRI.

> FN6 - Plaintiff seems to refer to his meniscus.

(*Id.*, p. 7).

Based on the face of the Plaintiff's pleadings and Defendant Bunting's Answer (Doc. 88), it

is not clear if Plaintiff has a meritorious Eighth Amendment claim against her.[6]  Further, based on

---

[6] As this Court stated in *Anderson v. BOP*, 2005 WL 2314306 (M.D. Pa. 2005), *7:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999)(*citing Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish a medical claim based on the Eighth Amendment, an inmate must allege (1) acts or omissions by prison officials sufficiently harmful (2) to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 582 (3d Cir.2003). The inmate must satisfy this two-part, conjunctive test. Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

> In the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or

delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed. *Estelle v. Gamble,* 429 U.S. 97, 104--105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, if a prisoner is under the care of a medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill,* 372 F.3d at 236; *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff).

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *Farmer, supra,* 511 U.S. at 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment...." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.,* 429 U.S. at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon,* 897 F.2d 103, 110 (3d Cir.1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a

Plaintiff's stated dilatory conduct, Defendant Bunting, as well as Defendants Jennings and Betti, have been prevented from trying to discover the evidence Plaintiff has to show that they were deliberately indifferent to his serious medical needs.  All Defendants have also been prevented from supporting their defenses at trial based on Plaintiff's inaction in this case.  Indeed, as affirmative defenses in their Answers, Defendants have asserted, in part, Plaintiff's failure to state a claim upon which relief can be granted, qualified immunity, and a defense that Plaintiff was provided with proper care while he was confined at LCP.  (Docs. 78 and 88).  Again, Defendants have not been able to pursue these defenses based on Plaintiff's dilatory conduct.

Thus, based only on the pleadings, for present purposes, the Court finds that Plaintiff's claims may have merit.  Therefore, we find that the final *Poulis* factor weighs in Plaintiff's favor.[7]

---

§ 1983 cause  of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993).

[7] Plaintiff alleged  that he had a serious physical condition due to a bone and disc broken in his neck and that he was in bad pain. (*Doc. 16*, p. 4).  We previously found that Plaintiff stated he had a serious medical condition.  Plaintiff stated that he tried to tell Defendant Bunting several times about his daily pain for 12 months at LCP, and claimed  that he "was left in pain night and day for '12' months without the right care." (*Id*.).  Plaintiff stated that Bunting knew about his daily pain, and that she only gave him muscle cream and Motrin that did not help.  Plaintiff admitted that Bunting ordered him to have an X- ray, but he stated that he did not trust her or the Mercy Hospital, since she was nasty and unprofessional when she ordered them, and since he had to write to Warden Jennings about her unprofessional conduct. (*Id*., p. 5).  Plaintiff conceded  that Bunting had a doctor examine him, but he stated that the doctor did what Bunting told her.  (*Id*., p. 6).   Plaintiff stated that, despite his complaining to LCP staff about his pain and suffering due to a broken bone in his disc and neck, Defendant "Bunting did not take time out and send me to some other hospital.  I was put on hold for '12' month's before (sic) Geisinger Hospital told me I had a disc and bone broken." (*Id*., p. 6).
Plaintiff alleged that Defendant Bunting denied him proper medical care for 12 months (*i.e.*, needed back surgery), despite his being in constant pain and despite telling her about it, and that she was deliberately indifferent to his serious medical needs.  Plaintiff alleged that

Based on all of the *Poulis* factors, the Court agrees with Defendant, and finds that dismissal with prejudice of this action in its entirety is warranted under the circumstances described herein. The Court has given Plaintiff every possible opportunity to pursue his § 1983 case, and it finds that no further opportunity should be afforded, even though Plaintiff is *pro se*. Additionally, while Plaintiff may have stated Eighth Amendment claims with merit, the remainder of the *Poulis* factors weigh heavily towards dismissal of this case. *See Smith*, at * 9, n. 10; *Bromily, supra*.

Moreover, the time in which Plaintiff was to have filed his opposition brief to Defendant Bunting's Motion to Dismiss has expired.[8]  Plaintiff has neither filed his opposition brief nor requested an extension of time in which to do so. Thus, we deem Plaintiff as not opposing the stated Motion of the Defendant Bunting pursuant to Local Rule 7.6 (M.D. Pa.).

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for "failure of the plaintiff to *prosecute* or comply with these rules or *order of court*, . . ." (emphasis added).  In the instant case, Plaintiff has failed to both prosecute his action and to comply with Orders of the Court including his failure to apprise the Court of his current address.  Therefore, Plaintiff's action shall be dismissed in its entirety on the basis of Plaintiff's failure to timely file his brief in opposition to the outstanding Motion to Dismiss, as well as for Plaintiff's failure to comply with the Orders of the Court and for his failure to prosecute his action.

---

Defendant Bunting denied him medical care after his fall at LCP and that he was treated with deliberate indifference by her at LCP.

[8]Even though Plaintiff's copy of Defendant Bunting's Motion mailed to him was returned as undeliverable (Doc. 143), Plaintiff had the duty to inform the Court of his address, as well as to check on the status of his case to keep it moving forward.

An appropriate Order follows.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 18, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EMERSON, | : | CIVIL ACTION NO. **3:CV-06-0035** |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Magistrate Judge Blewitt |
| | : | |
| | : | |
| PAUL L. JENNINGS, et al., | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW,** this  day of **March 2009**, based on Plaintiff's personal conduct in failing to participate in Court-ordered conferences, based on Plaintiff's failure to timely file his brief in opposition to the outstanding Motion to Dismiss of Defendant Bunting (Doc. 140), based on Plaintiff's failure to comply with the Orders of the Court, and based on Plaintiff's failure to prosecute his action, and upon consideration of the *Poulis* factors, **IT IS HEREBY ORDERED THAT** Plaintiff's Complaint is **DISMISSED, with prejudice,** in its entirety, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 18, 2009**